UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| BRIAN P. HINKLEY, ) | |
| ) | |
| Movant, ) | |
| v. ) | 1:07-cr-00043-JAW-1 |
| ) | 1:11-cv-00379-JAW |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent ) | |

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

Brian Hinkley pled guilty on March 25, 2008, to two counts of an indictment charging him with possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(A). The parties stipulated that Hinkley had previously pleaded guilty to two counts of possessing sexually explicit materials in Maine state court. The Government's case included evidence Hinkley had distributed at least four pornographic images to an individual in South Carolina in exchange for other images and had posted an additional 250 such images to a website potentially in exchange for other images. Although Hinkley's sentencing presentation included evidence that he would be particularly vulnerable in a prison setting due to the childhood trauma he had suffered, he was ultimately sentenced under a guidelines calculation that included a five level enhancement for distribution of pornography to concurrent terms on both counts of 151 months in prison. Following denial of his direct appeal, Hinkley filed this motion to vacate pursuant to 28 U.S.C. § 2255. Hinkley raises a number of grounds, but his primary contention is that his retained counsel were ineffective in providing him with a defense for a variety of reasons. I now recommend that the Court deny the motion and summarily dismiss this matter without any evidentiary hearing.

## GROUNDS RAISED IN AMENDED MOTION

After I granted in part Hinkley's motion to amend his 28 U.S.C. § 2255 petition (ECF No. 126), the amended petition now asserts the following grounds: (1) an ineffective assistance of counsel claim regarding what Hinkley claims was his counsel's erroneous failure to challenge by way of a motion to suppress both statements he made and evidence seized pursuant to a warrant, including a claim that officers made a warrantless entry into his home; (2) a jurisdictional challenge to the indictment based upon the claim that a federal prosecution on these facts improperly impinged on state court jurisdiction and violated the Tenth Amendment to the United States Constitution; (3) an ineffective assistance of counsel claim based on an allegation that counsel failed to properly investigate the case before allowing Hinkley to enter a plea of guilty; and (4) an ineffective assistance claim relating to counsel's alleged failure to argue effectively for proper application of the guidelines to his sentence, including an improper calculation of his criminal history and an inappropriate five-level enhancement based upon Hinkley's distribution of child pornography on a website.

## DISCUSSION

### *The Federal Jurisdictional Claim*

Hinkley persistently argues that the federal statutes under which he was convicted, 18 U.S.C. §§ 2252A(a)(5)(B), 2256(8)(A), are unconstitutional because they exceed Congress's power to regulate interstate commerce and violate the Tenth Amendment to the United States Constitution. He also claims that the federal government did not have the authority to investigate him and should have forwarded the case to the Maine state authorities for their consideration. However, each of those constitutional and jurisdictional claims was available to

Hinkley at the time he took his direct appeal and Hinkley failed to raise them. The result is that, in order to litigate them in a collateral challenge, Hinkley has the burden of showing both "cause" for the procedural default and "prejudice." See United States v. Frady, 456 U.S. 152, 167-168 (1982).

Hinkley does not couch this argument in the language of an ineffective assistance claim, but even if he were to do so the patent frivolity of his arguments negates any claim of either ineffective assistance or another constitutional infirmity.  Maine's sovereignty was certainly not impinged by this prosecution.  Legislation that is within Congress's Commerce Clause authority does not violate the Tenth Amendment.  United States v. Rene E., 583 F.3d 8, 19 n.9 (1st Cir. 2009).  Hinkley does not cite a single case which suggests the statute under which he was convicted violated the Commerce Clause and, indeed, most courts which have considered the issue have concluded that the requisite interstate commerce nexus exists to pass constitutional review.  See, e.g., United States v. Gallenardo, 579 F.3d 1076, 1081 (9th Cir. 2009); United States v. Malloy, 568 F.3d 166, 179 (4th Cir. 2009) (collecting cases); United States v. Sullivan, 451 F.3d 884, 887-88 (D.C. Cir. 2006); United States v. Harris, 358 F.3d 221, 222-23 (2d Cir. 2004).  The Government has clearly explained why it did not violate Hinkley's rights under any constitutional theory and other than his own ipse dixit, Hinkley has offered no authority for the propositions that his rights were violated under either the Commerce Clause or the Tenth Amendment.

*Ineffective Assistance in Relationship to a Motion to Suppress*

The prosecution version of the offense (ECF No. 66) described trial evidence showing that on July 21, 2005, federal agents executed a search warrant at the home Hinkley shared with his grandmother Judith Lowe and seized a computer and related materials. During an interview,

described by the prosecution version as non-custodial, Hinkley admitted that he regularly used the computer, described his Internet mail accounts and screen name "jbullfrog678," and reported that he had three or four "Photobucket" accounts on which he stored images of child pornography. ("Photobucket" is an Internet-based service used to store and share digital images.) Hinkley admitted that he was attracted to ten-year-old girls, chatted with others over the Internet about child pornography, and used "Yahoo fetish groups" to communicate his interest. He knew possessing child pornography was a crime.

  On April 12, 2006, officers from the Maine State Police executed a search warrant on the Sabattus, Maine, home of Jennette Lucas. Hinkley was described as a family friend and was present in the residence at the time of the search. After a search of the residence revealed no child pornography on the Lucas computer and the Lucases denied any involvement in child pornography, officers interviewed Hinkley. Hinkley admitted that he visited the Lucas residence nightly and used his laptop to log onto their wireless connection and that his laptop would probably contain child pornography. He told the officers all the child pornography came from the Internet and did not involve local children and that he was doing research for a book on pedophiles and how to protect children from them. He also disclosed that he had been convicted of possessing sexual images while attending the University of Maine–Farmington.

  After the search at the Lucas residence was complete, officers asked Hinkley where his laptop was and Hinkley led police to his Lewiston apartment. Upon arrival, he powered up his Dell laptop and showed officers images from his "My Pictures" folder, which included both child pornography and nude images. After the officers saw child pornography, they informed Hinkley that they would have to seize his computer. He thereafter signed a written consent to search form. Hinkley told the officers that he was doing research and traded images with

4

pedophiles to get them to open up and share their "M.O." During the interview, Hinkley frequently mentioned how he talked to pedophiles on-line and traded pictures with them. He said he thought child pornography was sick and was trying to help others with his research. He told the officers he planned to write a book but he had not written anything down, he had only his mental notes.

     Hinkley claims his defense team, consisting of two retained attorneys, was ineffective because counsel never filed a motion challenging either the seizure and search of the computers or the admissibility of the statements made to officers. Hinkley's 28 U.S.C. § 2255 claims are dependent on proving ineffective assistance of counsel under the Strickland v. Washington, 466 U.S. 668 (1984) Sixth Amendment standard and Hill v. Lockhart, 474 U.S. 52 (1985), a case addressing ineffective assistance claims related to plea decisions. "In order to prevail," Hinkley must show "both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (citing Strickland, 466 U.S. at 688, 694). "In other words," Hinkley "must demonstrate both seriously-deficient performance on the part of his counsel and prejudice resulting there from." Id. "Moreover, when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's plea and sentencing, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

     In this case three different computers were searched, two pursuant to presumptively valid search warrants and one, Hinkley's laptop, pursuant to a written consent to search. As

reasonably competent counsel would know, where a search is under the authority of a warrant, a presumption of validity attaches and the burden is on the challenger to overcome that presumption. Franks v. Delaware, 438 U.S. 154, 171 (1978); see also United States v. Longmire, 761 F.2d 411, 417 (7th Cir. 1985) (describing shifting burdens depending on whether the search is or is not undertaken pursuant to a warrant). Assuming that Hinkley has standing to challenge warrants directed at computers in his grandmother's house and his friend's house, Hinkley has identified no flaw in either warrant[1] that would overcome this presumption of legality. Even if some flaw in the warrant could have been identified, as reasonably competent counsel would also know, because the searches were pursuant to warrants the "good faith" exception to the exclusionary rule would have saved the admissibility of the resulting evidence. See United States v. Leon, 468 U.S. 897, 905 (1984). Competent counsel would also know that consent is a valid exception to the warrant requirement and that consent can be voluntarily obtained. Schneckcloth v. Bustamonte, 412 U.S. 218 (1973). The obvious futility of any challenge to any of the seizures, whether pursuant to a warrant or by consent, shows that there was neither deficient performance by counsel nor prejudice to Hinkley. See Strickland, 466 U.S. at 687.

     Essentially the same analysis applies to the attorneys' failure to move for suppression of the statements Hinkley made to the officers. The facts clearly establish that Hinkley was never provided with the warning required by Miranda v. Arizona, 384 U.S. 436, 444 (1966), but the record just as clearly establishes that Hinkley was never in custody for purposes of Miranda. Hinkley agrees he was at his grandmother's residence when the search occurred and that he talked with the officers. He claims to have asked them on two occasions if he needed an

---

[1]     It appears that no evidence was found during the second search pursuant to a warrant.

attorney, but the record that Hinkley develops (Mot. for Habeas Relief at 4-5, ECF No. 121-1) does not demonstrate that his Sixth Amendment right to counsel had been invoked or that he was placed in a custodial situation during either the July 21, 2005, search of the grandmother's house or the April 12, 2006, search of the Lucas residence and ultimately his own residence by consent. While portions of Hinkley's unsworn motion cited above are replete with conclusory statements about being restrained in a police cruiser and coerced into going to his own residence with the officers, he offers no sworn factual details which would support a finding that the officers created a custodial situation.  Reasonably competent counsel would recognize that a motion to suppress in these circumstances would be an exercise in futility.  Furthermore, if Hinkley actually went to trial, the evidence on the computer in the grandmother's house would have been admitted in any event, and once that evidence was admitted, if Hinkley had chosen to testify in his own defense, his statements would have been admissible because there is absolutely no suggestion that the statements were not voluntarily made.  Hinkley has simply failed to show that the failure to pursue a suppression motion was prejudicial to the defense in any event.

### *Ineffective Assistance in Regard to Investigation and Advice Concerning the Guilty Plea*

Hinkley states, again in conclusory fashion, that his guilty plea was not entered voluntarily, knowingly, and intelligently, primarily because his attorneys failed to undertake a proper investigation prior to providing him with advice to plead guilty to the charges.  To the extent Hinkley references particular avenues of investigation such as suppression of statements, evidence seized, or sentencing issues, those allegations have been addressed under his various specific grounds.  To the extent that Hinkley is complaining that his attorneys failed to "solicit[ ] from the prosecutor and the FBI agents ALL of the discoverable and exculpatory evidence and information in their possession" (Mot. for Habeas Relief at 22), Hinkley's motion is nothing but

a self-serving allegation, a "gauzy generalit[y]." David v. United States, 134 F.3d 470, 478 (1st Cir. 1998). Hinkley has pointed to no additional avenue of investigation which would have negated the overwhelming evidence regarding his possession of child pornography.

*Ineffective Assistance Claims in the Context of Sentencing Proceedings*

Hinkley's first challenge to his counsel's performance at sentencing reprises arguments made by counsel at sentencing and on appeal relating to the five level enhancement for distributing something of value. Competent counsel cannot be faulted for failing to dispute the PSI's account of Hinkley's crime, which produced the adjustment for receiving something of value, but no decrease for mere receipt of child pornography pursuant to USSG § 2G2.2(b)(2). Hinkley himself told the Rule 11 Court that the prosecution version of the events was true and even in the post-conviction motion he does not dispute the facts, just the legal conclusion that resulted in the enhancement. See United States v. Santiago Miranda, 654 F.3d 130, 138 (1st Cir. 2011) (reiterating established precedent that presumption of verity attaches to statements defendant makes to Rule 11 court). Statements a defendant makes in open court are presumed to be true. See id. There has been no reason given to dispute the accuracy of Hinkley's admissions to the Court. By accepting the guilty plea and accepting the facts as identified in the PSI, the Court obviously agreed that the essence of Hinkley's representations was accurate.

As far as the Court's legal conclusion that the enhancement should apply, the appellate court's summary affirmance of Hinkley's sentence demonstrates that the admitted and still undisputed facts sufficed to impose a five-level enhancement for distributing something of value, which meant that Hinkley was disqualified from any adjustment for mere receipt of the pornography. His defense team cannot be faulted for the legal conclusion that has been embraced by the First Circuit. The presentence report indicates that counsel's Objection # 2

went to this very issue. The defense team filed a sentencing memorandum and argued the issue orally (Sentencing Tr. at 14, ECF No. 115; Sentencing Mem. at 2-6, ECF No. 79) in an attempt to persuade the Court the enhancement did not apply. Their performance was not ineffective assistance of counsel. They simply had a case where the law and the facts were against them and they lost the issue.

Hinkley's second major complaint about counsel's performance at sentencing related to the computation of criminal history points. Again, counsel recognized the issues, negating Hinkley's argument that they failed to investigate the situation and failed to educate themselves regarding the guidelines computation. The first issue raised by Hinkley's motion to vacate concerns the Farmington, Maine, convictions for possession of sexually explicit material for which one criminal history point was assigned. In their sentencing memorandum and in an early motion filed with the Court[2] (Mot. to Strike Prior Conviction, ECF No. 48, and Sentencing Mem. at 5, ECF No. 79), counsel argued that the Farmington conviction should not trigger the mandatory minimum sentence. Everyone knew from the moment the United States filed its synopsis prior to initial appearance that the prosecution's position was that the mandatory minimum sentence was applicable in their view. (Synopsis, ECF No. 2, citing 18 U.S.C. § 2252A(b)(2)). The guideline range was well in excess of the mandatory minimum of ten years and thus this issue of whether the convictions properly came under the mandatory minimum definition became less important in the case. Counsel advocated strongly for a variant sentence departing from the guidelines, and the Court rejected their arguments. Again, their conduct

---

[2]   Hinkley is highly critical of his counsel's early attempt to obtain an "advisory" ruling regarding the applicability of these prior convictions. (Mot. for Habeas Relief at 8-9, ECF No. 121-1.) While the Court may have rejected counsel's attempt to strike these prior convictions early in the process because they were misdemeanor convictions (Order dismissing Mot. to Strike Prior Conviction, ECF No. 57), counsel's strategic choice to focus the Court's attention on the issue early in the process is not necessarily evidence of ineffective assistance. Counsel tried valiantly to prevent the inevitable. That is not necessarily evidence of ineffective assistance.

demonstrates being on the losing side of an argument, but it is not ineffective assistance of counsel.

Hinkley's other complaint about his criminal history points relates to his Massachusetts conviction for failure to register as a sex offender. The presentence report, Objection # 3, relating to ¶ 27, demonstrates that defense counsel preserved their objection to the inclusion of this conviction without a certified copy of the conviction on file. Hinkley's point now appears to be that since he received only probation and no jail sentence, the conviction should not count. His view is based upon a misapprehension of the guidelines application. The statute under which he was convicted in Massachusetts, Failure to Register or Verify Registration Information, Mass. Gen. Laws ch. 6, § 178H,³ carried a potential sentence of up to two and one-half years imprisonment at the time of Hinkley's conviction. Thus the potential sentence of imprisonment was in excess of one year and the fact that Hinkley actually received probation was irrelevant. Counsel's "ineffective assistance" as described by Hinkley had nothing to do with the application of one criminal history point for this conviction.

## CONCLUSION

For the reasons above I recommend that the Court summarily deny this 28 U.S.C. § 2255 motion and recommend that the Court deny Hinkley a certificate of appealability in the event a notice of appeal is filed.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being

---

³ The two and one-half year maximum has been in place since at least 1996. 1996 Mass. Adv. Legis. Serv. 239 (LexisNexis).

served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

July 26, 2012
/s/Margaret J. Kravchuk
U.S. Magistrate Judge