UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:07-cr-00043-JAW-1 |
| | ) | |
| BRIAN P. HINKLEY | ) | |

**ORDER DISMISSING REQUEST FOR EARLY TERMINATION OF SUPERVISED RELEASE**

The court dismisses without prejudice a supervisee's request for early termination of supervised release. The supervisee has been convicted of the possession of child pornography, and in weighing the incremental burden of continued supervised release against the need to protect potentially vulnerable victims, namely young children, the court has struck the balance in favor of the children.

**I.   BACKGROUND**

   **A.   Procedural History**

On May 11, 2007, the United States of America initiated a criminal complaint against Brian P. Hinkley, charging him with two counts of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). *Compl.* (ECF No. 1). On July 19, 2007, a federal grand jury issued a four-count indictment against Mr. Hinkley, alleging four instances of possession of child pornography from December 8, 2004 through April 12, 2006. *Indictment* (ECF No. 14). On March 25, 2008, Mr. Hinkley pleaded guilty to Counts Two and Four of the indictment, which alleged that he possessed child pornography on July 21, 2005 and April 12, 2006. *Min. Enty* (ECF

No. 67). On June 24, 2008, the Probation Office prepared a Revised Presentence Investigation Report. *Revised Presentence Investigation Report* (PSR). On March 10, 2009, the Court sentenced Mr. Hinkley to 151 months of incarceration on Counts Two and Four, imposed ten years of supervised release following incarceration, and imposed a $200 special assessment. *J.* (ECF No. 105).

On November 19, 2025, Mr. Hinkley requested that his period of supervised release be terminated early. *Def.'s Req. for Early Termination* (ECF No. 144) (*Def.'s Req.*). On December 15, 2025, the Government filed its objection. *Gov't's Resp. to Def.'s Req. for Early Termination of Supervised Release* (ECF No. 146) (*Gov't's Opp'n*). Mr. Hinkley did not file a reply.

B.     **The Offense**

The Presentence Investigation Report (PSR) contains a description of the offense conduct. *PSR* ¶ 2. It states that the investigation began on May 26, 2005, when the Charleston, South Carolina Police Department executed a search warrant on the dormitory room of a student at The Citadel, a military college in Charleston, and recovered the student's computer. *Id.* The student's computer contained over 100 images of child pornography, and the student's chatroom logs revealed that the student had been corresponding with someone with the screenname jbullfrog678. *Id.* The chats between the student and jbullfrog678 focused on their mutual interest in having sexual relations with young females. *Id.* Jbullfrog678 expressed an interest in befriending the parents of small children to gain access to them and to engage in sexual encounters with them. *Id.* Jbullfrog678 sent images of child pornography to the student and urged the student to send some to him. *Id.*

2

Law enforcement traced jbullfrog678 to a residence in Strong, Maine. *Id.* Law enforcement was able to confirm that jbullfrog678 was Mr. Hinkley, and it also determined that he had two sex-based convictions. *Id.* Based on this cumulative information, law enforcement obtained a search warrant, which it executed on July 21, 2005. *Id.* Mr. Hinkley admitted to the searching officers that they would find child pornography on his computer, that he used the screenname jbullfrog678, that he had chatted with a student at The Citadel, and that he was attracted to females around the age of ten. *Id.* As a result of a forensic analysis of Mr. Hinkley's computer, law enforcement found over 500 images of child pornography on his computer with 38 different minors previously identified as victims of child pornography offenses. *Id.* ¶ 3. The images depicted children who were toddlers to those about eight to ten years old. *Id.*

On January 29, 3006, law enforcement investigated another tip about someone possessing and posting child pornography. *Id.* ¶ 4. Law enforcement identified the residence where the computer with the child pornography was located, and when the officers arrived to investigate, Mr. Hinkley was there. *Id.* Mr. Hinkley admitted that he also used this computer to access and trade child pornography images. *Id.* Mr. Hinkley claimed that he was researching pedophiles and planned to write a book on them, their motives, and the protection of children. *Id.* The police located Mr. Hinkley's laptop, and it revealed about 300 sexually explicit images of children, including digital images and twenty-five videos. *Id.* These images showed sex acts against children as young as one year old. *Id.*

Mr. Hinkley faced a mandatory minimum term of incarceration of ten years and a maximum of twenty years. *Id.* ¶ 42 (citing 18 U.S.C. § 2252A(b)(2)). The PSR calculated the applicable sentencing guideline range for incarceration as 151 to 188 months, a fine from $17,500 to $175,000, supervised release of two years to life, and a special assessment of $200; no claims for restitution were made. *Id.* ¶¶ 42-51. Mr. Hinkley was released from incarceration to supervised release on March 22, 2019, and his term of supervision ends on March 21, 2029. *Gov't's Opp'n* at 2.

## II.   THE PARTIES' POSITIONS

### A.   Brian Hinkley's Request

Mr. Hinkley has written a two-page letter, requesting termination of his term of supervised release. *Def.'s Req.* at 1-2. Mr. Hinkley notes that at that time (November 2025), he had completed six years and 8 months of his ten-year term of supervision. *Id.* at 1. He delineates the "significant progress" he has made in his personal and professional life since the start of his supervision. *Id.* Mr. Hinkley stresses that he understands the seriousness of his office and assures the Court that he deeply regrets his actions and the hurt he caused. *Id.* Mr. Hinkley observes that he has complied with all conditions of supervised release and has had no new violations or offenses. *Id.*

Mr. Hinkley informs the Court that he was graduated from the University of Southern Maine summa cum laude with a bachelor's degree in linguistics and has maintained steady employment. *Id.* Mr. Hinkley says that he has reconnected with his family and is in a long-term, committed relationship. *Id.* at 2. Based on his

progress and compliance, Mr. Hinkley requests that the Court terminate his period of supervised release.

### B. The Probation Office's Position

In its opposition, the Government quotes the position of the Probation Office:

> Mr. Hinkley's supervision began on March 22, 2019, meaning that he has completed over six years of his term. He remains fully compliant with his conditions of supervision and owes no outstanding fines or restitution. He has maintained stable employment, housing and interpersonal relationships. By all accounts he is doing well. Our office wishes to acknowledge the progress Mr. Hinkley has made; however, we have declined to take an official position in support of early termination, other than to note we would not object were the court to grant the defendant's pro se motion.

*Gov't's Opp'n* at 3.

### C. The Government's Opposition

The Government objects to Mr. Hinkley's request for several reasons. First, the nature of his offenses causes concern about the need to protect the public from future crimes. *Gov't's Opp'n* at 5. Second, the request is not coming from the Probation Office, but from the Defendant. *Id.* Third, the Government views the Probation Office's position as equivocal. *Id.* Fourth, the Probation Office has not given the Government all the information necessary for the Government to take an informed position. Fifth, the Government has no information about the technical violation the Probation Officer noted has been resolved.

### III. LEGAL STANDARDS

Under 18 U.S.C. § 3583(e)(1), a court may "terminate a term of supervised release and discharge the defendant at any time after the expiration of one year of supervised release . . . ." The court must be "satisfied that such action is warranted

by the conduct of the defendant released and the interest of justice." *Id.* "[C]ompliance with the terms and conditions of supervised release, though laudable, is generally not grounds for early termination." *United States v. Flecha-Maldonado*, Crim. No. 01-00615-2 (RAM), 2020 U.S. Dist. LEXIS 94549, at *5 (D.P.R. May 28, 2020) (quoting *United States v. Farmer*, No. 1:05-cr-00088-JAW, 2015 U.S. Dist. LEXIS 145925, at *2 (D. Me. Oct. 28, 2015)) (alterations omitted). In general, a court's determination of whether to reduce the term of supervision is based on weighing the sentencing factors set forth in 18 U.S.C. § 3553(a), excluding § 3553(a)(2)(A). *See* 18 U.S.C. § 3583(e); *United States v. Guzman-Madera*, No. 1:22-cr-10189-IT, 2025 U.S. Dist. LEXIS 75246, at *2 (D. Mass. Apr. 16, 2025). The statute's exclusion of § 3553(a)(2)(A), which requires a sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," highlights the principle that "[s]upervised release fulfills rehabilitative ends." *Guzman-Madera*, 2025 U.S. Dist. LEXIS 75246, at *2 (citing *United States v. Johnson*, 529 U.S. 53, 59 (2000)).

## IV.   DISCUSSION

The Court dismisses Mr. Hinkley's request for early termination. The Court remains deeply concerned about the nature of Mr. Hinkley's crime. Child pornography covers a wide range of conduct. Though rarely prosecuted, the term captures images of people in their later teens, who are just under eighteen and anatomically indistinguishable from young adults. 18 U.S.C. § 2256(1) ("'minor' means any person under the age of eighteen years"). The law enhances the statutory

penalties for possession of images of prepubescent minors or minors under the age of twelve. *See* 18 U.S.C. § 2252A(b)(2).

As Mr. Hinkley's crimes revealed an obsession with very young and vulnerable members of society, it triggers the Court's overriding obligation to protect those unable to protect themselves. *See United States v. Farmer*, No. 1:05-cr-00088-JAW, 2015 U.S. Dist. LEXIS 145925, at *3-4 (D. Me. Oct. 28, 2015); *United States v. Chapman*, No. 1:06-cr-00056-JAW, 2014 U.S. Dist. LEXIS 124770, at *3-4 (D. Me. Sept. 8, 2014) ("The worry is that the females who were the object of Mr. Chapman's sexual interest were so young that they would be unable properly to protect themselves"). In *Chapman*, the defendant was interested in girls as young as seven, 2014 U.S. Dist. LEXIS 124770 at *3; here, Mr. Hinkley acknowledged that he was sexually interested in females around the age of ten, *see Prosecution Version* at 2 (ECF No. 66), but the Court found at the sentencing hearing, that he was sexually interested in girls around six years old. *Tr. of Proceedings*, *Sentencing Proceedings* at 98:10-16. Some of the pornography on his computer included sexual assaults against children as young as one year old. *PSR* ¶ 4.

In assessing Mr. Hinkley's request, the Court reviewed the conditions of supervised release for Mr. Hinkley and observes that, in contrast to many other defendants, his conditions are relatively benign. *J.* at 3-4. The drug testing condition was suspended. *J.* at 3. Two of the conditions, the prohibition against firearm possession, and the sex offender registration requirement, are superfluous since they are separately required as a matter of law. *Id.* The standard conditions require

employment, avoidance of excessive drinking or use of drugs, and maintaining contact with the supervising officer. *Id.* None appears onerous, and Mr. Hinkley has been complying with those conditions.

The special conditions, including participation in a sex offender treatment program and computer monitoring, are directly related to the type of crimes Mr. Hinkley committed and, in the Court's view, are valid. The Court acknowledges that in today's world computer monitoring could be problematic, but Mr. Hinkley has furthered his education, is currently working, and is involved with the community despite these restrictions. In his request, Mr. Hinkley did not mention that the computer restrictions are affecting his professional or social life.

In the Government's opposition, it refers to a technical violation that the Probation Office found during Mr. Hinkley's period of supervised release, but as the Probation Office did not reveal the nature of the violation to the Government and Mr. Hinkley says that he has had no violations, the Government makes the point that it does not know what the technical violation was. *Id.* at 4-5. The Government assumes that the Probation Office informed the Court about the technical violation in the Probation Office's memorandum to the Court. *Id.* at 3. But having carefully reviewed the Probation Office's memorandum, the Court is not certain what the technical violation was and has not considered it in ruling on the pending request.

In evaluating Mr. Hinkley's motion, the Court observes that, apart from stating that he has complied with the terms of supervised release to date, he has given no reason that the Court should allow an early discharge of his period of

8

supervised release. *Def.'s Req.* at 1-2. As the Court noted in *Chapman*, the Court "balances the incremental intrusion of these supervised release conditions on [the defendant's] life against the inherent risk of the conduct underlying his conviction." *Chapman*, 2014 U.S. Dist. LEXIS 124770, at *5. "In making this assessment, the Court focuses on the vulnerability of the potential victims, and strikes its judgment in favor of the potential victims." *Id.*

The Court is encouraged that Mr. Hinkley has so done well on supervised release. However, in the Court's view, "compliance with the terms and conditions of . . . supervised release, though laudable, is generally not grounds for early termination." *United States v. Seger*, No. 1:98-cr-00065-JAW, 2014 U.S. Dist. LEXIS 151558, at *17 (D. Me. Oct. 27, 2014) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

## V. CONCLUSION

The Court DISMISSES without prejudice Brian P. Hinkley's Pro Se Request for Early Termination of Supervised Release (ECF No. 144).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of February, 2026